IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| ESM TECHNOLOGIES, LLC | : | COMPLAINT |
| Plaintiff, | : | |
| v. | : | |
| | : | Jury Trial Demanded |
| BIOVA, LLC; DENNIS CASEY; | : | |
| AND MATTHEW STEGENGA | : | |
| Defendants. | : | |

Plaintiff, ESM Technologies, LLC, by way of its Complaint against defendants, BioOva, LLC, Dennis Casey and Matthew Stegenga alleges and says:

THE PARTIES

1. Plaintiff, ESM Technologies, LLC ("ESM"), is a Missouri corporation having a principal place of business at 2213 Missouri Street, Carthage, Missouri 64836.

2. Upon information and belief, defendant BioOva, LLC ("BiOva") is an Iowa corporation having a principal place of business at 5800 Merle Hay Road, Johnston, Iowa 50131.

3. Upon information and belief, defendant Dennis Casey ("Casey") is an individual residing in Polk County, Iowa.

4. Upon information and belief, defendant Casey is President of defendant BiOva.

5. Upon information and belief, defendant Matthew Stegenga ("Stegenga") is an individual residing in Johnson County, Kansas.

6. Upon information and belief, Stegenga is Director of Marketing for BiOva.

## JURISDICTION AND VENUE

7. Jurisdiction over the subject matter of this Complaint is vested in the United States District Court pursuant to 28 U.S.C. § 1331 [general federal question jurisdiction], 28 U.S.C. § 1338(a) [special federal question jurisdiction], and 28 U.S.C. § 1367 [supplemental jurisdiction].

8. The Court has personal jurisdiction over Defendants because they have transacted business, made contracts, committed tortious acts in the State of Missouri and/or have committed tortious acts outside the state and causing injury in the State of Missouri within the meaning of R.S.Mo. §506.500 ("the Missouri Long Arm Statute"). Similarly, the exercise of personal jurisdiction over Defendants comports with due process requirements of the United States Constitution because: (a) Defendants have purposefully established "minimum contacts" with the State of Missouri, and (b) the exercise of personal jurisdiction over Defendants will not offend the traditional notions of fair play and substantial justice.

9. Venue is conferred in this judicial district pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(b).

## ALTER EGO

10. Paragraph Nos. 1 through 9 above are incorporated herein by reference as though they were set forth herein at length.

11. Upon information and belief, Casey is an officer of BiOva.

12. Upon information and belief, Casey directs and controls BiOva's business activities.

13. Upon information and belief, Casey dominates the direction and control of BiOva such that BiOva is a mere instrument of Casey.

14. Upon information and belief, Casey has used and continues to use the corporate cloak of BiOva to perpetuate wrongdoing against ESM as set forth herein.

15. Upon information and belief, wrongdoing by Casey through his control of BiOva as set forth herein proximately caused the injuries to ESM complained of herein.

COUNT I
PATENT INFRINGEMENT

16. Paragraph Nos. 1 through 15 above are incorporated herein by reference as though they were set forth herein at length.

17. ESM is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,946,551 (hereinafter referred to as "the `551 Patent") entitled, "Preparation of Hyaluronic Acid From Eggshell Membrane". A copy of the `551 Patent is attached hereto as Exhibit A.

18. The `551 Patent duly and legally issued on September 20, 2005 to New Life Resources, LLC.

19. The `551 Patent was subsequently transferred by assignment from New Life Resources, LLC to ESM. A copy of the Notice of Recordation of Assignment Document dated February 7, 2008 confirming the recordation of the assignment document with the United States

- 3 -
Case 6:10-cv-03009-SWH   Document 1   Filed 01/07/10   Page 3 of 16

Patent and Trademark Office is attached as Exhibit B.

20. ESM has and continues to distribute, market and sell products manufactured by methods covered by the claims of the `551 Patent, including its NEM® brand product.

21. Upon information and belief, BiOva has offered for sale, sold, imported, caused to be imported, used and/or induced others to use a process (and products resulting therefrom) for making a hyaluronic acid composition that includes, *inter alia*, providing eggshell membrane from a mature fowl egg and extracting a hyaluronic acid rich fraction from the eggshell membrane (hereinafter "the accused technology").

22. Upon information and belief, BiOva's products manufactured using the accused technology include, but are not limited to, biovaderm™, biovaflex™, biovaplex™.

23. The activities of BioOva constitute direct infringement, contributory infringement and/or actively inducing infringement of the `551 Patent.

24. The acts of infringement by BiOva have been willful and deliberate, with full knowledge of ESM's patent rights.

25. As a result of the willful infringement of the `551 Patent by BiOva, ESM has been damaged and will continue to be damaged in an amount to be determined at trial. ESM has suffered and will continue to suffer irreparable injury unless the infringing activities of BiOva are enjoined.

26. By virtue of the willful and deliberate infringement by BiOva, this is an "exceptional case" within the meaning of 35 U.S.C. § 285.

## COUNT II
## BREACH OF CONTRACT

27. Paragraph Nos. 1 through 26 above are incorporated herein by reference as though they were set forth herein at length.

28. From about March 1, 2004 to about November 30, 2007, Stegenga was employed by ESM as a marketing director.

29. During Stegenga's tenure with ESM, he was provided and had access to trade secrets and confidential information belonging to ESM.

30. ESM derived and still derives benefits from the trade secrets and confidential information, including commercial and economic advantages over competitors in the market for compositions derived from eggshell membrane.

31. On November 30, 2007 Stegenga was notified in a letter that his position at ESM was being eliminated. A copy of the letter is attached as Exhibit C.

32. The letter dated November 30, 2007 states, in relevant part:

> We [ESM] ask that you [Stegenga] carefully guard and keep secret all trade secrets and confidential information concerning the business affairs of ESM Technologies and its subsidiaries and affiliates, including, but not limited to customer lists and information, pricing, personnel information, secret processes or other secret or confidential information, knowledge or data, whether or not such confidential information is obtained, acquired or developed by an employee during the period of his employment with ESM Technologies. We also ask that you not disclose any such confidential information to any person, firm or corporation or other third party or use the same in any way other than in connection with the business affairs of ESM Technologies, LLC or any of its subsidiaries and affiliates unless first securing the prior written consent of ESM Technologies.

- 5 -
Case 6:10-cv-03009-SWH   Document 1   Filed 01/07/10   Page 5 of 16

33. Stegenga agreed to the terms of the letter by his signature dated November 30, 2007.

34. Upon information and belief, Stegenga disclosed ESM's trade secrets and confidential information to Casey and BiOva without the consent of ESM.

35. The aforesaid activities of Stegenga constitute a material breach of the agreement not to disclose trade secrets or confidential information.

36. The breach of the agreement by Stegenga was willful and intentional.

37. The breach of the agreement has caused harm to ESM.

## COUNT III
## TRADE SECRET MISAPPROPRIATION

38. Paragraph Nos. 1 through 37 above are incorporated herein by reference as though they were set forth herein at length.

39. Upon information and belief, on or about July 2007, Stegenga was approached by Casey and was retained to perform sales and marketing services for BiOva.

40. Upon information and belief, Stegenga disclosed ESM's trade secrets and confidential information to Casey and BiOva.

41. Upon information and belief, Casey and BiOva used this information to develop competing products in the market for compositions derived from eggshell membrane.

42. The actions of BiOva, Casey and Stegenga constitute a misappropriation of ESM's trade secrets and confidential information.

43. The misappropriation of ESM's trade secrets has caused and continues to cause harm to ESM.

COUNT IV
MISAPPROPRIATION OF TRADE SECRETS
UNDER R.S.MO. 417.450 et. seq.

44. Paragraph Nos. 1 through 43 above are incorporated herein by reference as though they were set forth herein at length.

45. ESM's business information relating to eggshell membrane, including the methods, techniques, processes and devices used in the production of a composition that includes a hyaluronic acid rich fraction from eggshell membrane, as well as customer lists, prospects lists, pricing information, customer preferences, costs, formulae, and other confidential business information constitute protectable trade secret under Missouri Uniform Trade Secrets Act ("MUTSA") R.S.Mo. §§ 417.450-417.467.

46. The business information is a trade secret within the meaning of R.S.Mo. §417.453(4) in that it constitutes information that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or by use; and it has been the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

47. Despite an explicit duty to keep confidential such information, Stegenga disclosed ESM's trade secret information to Casey and BiOva. Casey, BiOva and Stegenga then used the trade secret information to develop and sell competing products in the market for compositions derived from eggshell membrane.

48. Such disclosure and use of trade secret information amounts to misappropriation under MUTSA. R.S.Mo. §417.453(2).

49. The misappropriation of ESM's trade secret information was done with full knowledge that such information was wrongfully obtained from ESM.

50. The misappropriation of ESM's trade secrets has caused and continues to cause harm to ESM.

51. ESM is entitled to a preliminary and permanent injunction enjoining BiOva, Casey, and Stegenga from using ESM's misappropriated trade secrets. R.S.Mo. §417.455.

52. Unless permanently enjoined, BiOva, Casey, and Stegenga will persist in using the misappropriated trade secrets, causing ESM continuing harm for which ESM has no adequate remedy at law.

## COUNT V
## UNFAIR COMPETITION

53. Paragraph Nos. 1 through 52 above are incorporated herein by reference as though they were set forth herein at length.

54. Upon information and belief, BiOva, Casey, and Stegenga sent advertising literature to potential customers of BiOva for products manufactured using the accused process.

55. Upon information and belief, the literature created and continues to create a false sense in the marketplace that BiOva has a legitimate product that can compete with ESM's products without infringing the `551 Patent.

56. Upon information and belief, BiOva, Casey and Stegenga used confidential

information and/or trade secrets belonging to ESM to develop competing products in the market for compositions derived from eggshell membrane, thereby deriving an unfair advantage in the marketplace.

57. Upon information and belief, by its acts, BioOva, Casey, and Stegenga have made and will continue to make substantial profits and gains to which they are not entitled to in law or equity.

58. BiOva, Casey, and Stegenga have acted intentionally, willfully, deliberately, maliciously, egregiously, and in bad faith to injure ESM.

59. This conduct, therefore, constitutes unfair competition at common law with ESM and is causing, and will continue to cause, ESM immediate and irreparable damage for which it has no adequate remedy at law.

60. Unless enjoined by the Court, BioOva, Casey, and Stegenga will continue the above-described acts of unfair competition, thereby deceiving the public and causing ESM immediate and irreparable damage for which it has no adequate remedy at law.

## COUNT VI
## TORTIOUS INTERFERENCE

61. Paragraph Nos. 1 through 60 above are incorporated by reference as though they were set forth herein at length.

62. Upon information and belief, BiOva, Casey, and Stegenga have sent BiOva's advertising literature to existing customers of ESM and potential customers of ESM.

63. Upon information and belief, based upon the false and misleading statements in

the literature and the misimpression caused in the marketplace that BiOva had a legitimate product that could compete with ESM's products without infringing the `551 Patent; BiOva, Casey and Stegenga disrupted ESM's reasonable expectation of a business relationship with prospective customers.

64. Upon information and belief, based upon the false and misleading statements in the literature and the misimpression caused in the marketplace that BiOva had a legitimate product that could compete with ESM's products without infringing the `551 Patent; BiOva, Casey and Stegenga interfered with existing business relationships that ESM had with existing clients.

65. Upon information and belief, ESM has lost sales and or orders for its NEM® brand products as a result of the actions taken by BiOva, Casey, and Stegenga.

66. BiOva, Casey, and Stegenga have acted intentionally, willfully, deliberately, maliciously, egregiously, and in bad faith to injure ESM.

67. This conduct, therefore, constitutes tortious interference with a business relationship at common law and is causing, and will continue to cause, ESM immediate and irreparable damage for which it has no adequate remedy at law.

68. Unless enjoined by the Court, BioOva, Casey, and Stegenga will continue the above-described acts of tortious interference, thereby causing ESM immediate and irreparable damage for which it has no adequate remedy at law.

## COUNT VII
## <u>UNJUST ENRICHMENT</u>

69. Paragraph Nos. 1 through 68 above are incorporated herein by reference as though they were set forth herein at length.

70. As a result of the false and misleading statements in the literature and the misimpression caused in the marketplace that BiOva had a legitimate product that could compete with ESM's products without infringing the `551 Patent; BiOva, Casey, and Stegenga benefited from increased sales, profits, market share, reputation, and goodwill, some of which ESM would otherwise have earned.

71. BiOva, Casey, and Stegenga knew, or reasonably should have known, that the increased sales, profits, market share, reputation, and goodwill, that it received resulted directly from the false impression they created in the marketplace.

72. BiOva, Casey, and Stegenga have acted intentionally, willfully, deliberately, maliciously, egregiously, and in bad faith to injure ESM.

73. This conduct, therefore, constitutes unjust enrichment at common law and is causing, and will continue to cause, ESM immediate and irreparable damage for which it has no adequate remedy at law.

74. Unless enjoined by the Court, BioOva, Casey, and Stegenga will continue the above-described acts of unjust enrichment, thereby causing ESM immediate and irreparable damage for which it has no adequate remedy at law.

75. It would be unjust for BiOva, Casey, and Stegenga to retain the benefits conferred upon them as a result of the false impression they intentionally created in the marketplace.

## COUNT VIII
## INDUCEMENT OF BREACH OF CONTRACT AND/OR
## TORTIOUS INTERFERENCE BY DENNIS CASEY

76. Paragraph Nos. 1 through 75 are incorporated by reference as though they were set forth herein at length.

77. Upon information and belief, Casey has engaged Stegenga with full knowledge of Stegenga's previous engagement with ESM.

78. Upon information and belief, Casey knew or should have known of the confidential relationship between Stegenga and ESM.

79. Upon information and belief, Casey acting alone and in concert with Stegenga has wrongfully caused Stegenga to divulge trade secrets and confidential information protected by the contractual relationship with ESM, thereby inducing Stegenga to breach his confidentiality agreement with ESM and/or tortiously interfering with Stegenga's confidentiality agreement with ESM.

80. Casey and Stegenga have acted intentionally, willfully, deliberately, maliciously, egregiously, and in bad faith to injure ESM.

81. This conduct has caused damage and continues to cause damage in the commercial marketplace to ESM.

82. Unless enjoined by the Court, Casey and Stegenga will continue the above described acts of inducement of breach of contract and/or tortious interference of contractual relations between Stegenga and ESM, thereby causing immediate and irreparable damage to ESM for which there is no adequate remedy at law.

## COUNT IX
## CIVIL CONSPIRACY

83. Paragraph Nos. 1 through 82 are incorporated by reference as though they were set forth herein at length.

84. BiOva, Casey, and Stegenga conspired with one another, such that there was a meeting of the minds, to misappropriate ESM's trade secrets, compete unfairly against ESM in the marketplace, tortiously interfere with ESM's business, infringe ESM's patent, and/or breach the contract executed by Stegenga agreeing not to reveal ESM's trade secrets.

85. BiOva, Casey, and Stegenga committed numerous overt acts in furtherance of the conspiracy, including but not limited to, the development of eggshell membrane-derived products based on technology conspiratorially derived from ESM which compete with those developed and sold by ESM, approaching customers developed by ESM to market and sell those products, and interfering with ESM's present and prospective business contracts.

86. As a direct and proximate result of the foregoing conduct, BiOva, Casey, and Stegenga have caused and continue to cause damages to ESM.

87. BiOva, Casey, and Stegenga have acted intentionally, willfully, deliberately, maliciously, egregiously, and in bad faith to injure ESM.

WHEREFORE, ESM prays for the following relief:

A. Judgment for ESM on its cause of action for patent infringement, breach of contract, trade secret misappropriation, unfair competition, tortious interference, unjust enrichment, inducement of breach of contract and/or tortious interference, and civil conspiracy.

B. Judgment against Dennis Casey personally as being the alter ego of BiOva.

C. Preliminary and permanent injunction enjoining Defendants, its officers, directors, agents, employees, and all those in active concert or participation with them who receive actual notice of the judgment by personal service or otherwise, from using the accused process and from otherwise infringing, contributing to infringement, and actively inducing infringement of the `551 Patent.

D. Preliminary and permanent injunction enjoining Defendants, its officers, directors, agents, employees, and all those in active concert or participation with them, who receive actual notice of the judgment by personal service or otherwise, from making any statement or representation that would cause the public to believe, contrary to fact, that Defendants have a legitimate product that could compete with ESM's products without infringing the `551 Patent.

E. Preliminary and permanent injunction enjoining Defendants, its officers, directors, agents, employees, and all those in active concert or participation with them, who receive actual notice of the judgment by personal service or otherwise, from using ESM's misappropriated trade secrets.

F. An award of compensatory and punitive damages to ESM by reason of the wrongs committed by Defendants, including an award of increased damages pursuant to 35

U.S.C. § 284, for Defendants' willful and deliberate patent infringement.

G. An award of damages to ESM of all profits realized by Defendants that are attributable to the described acts of patent infringement, breach of contract, trade secret misappropriation, unfair competition, tortious interference, unjust enrichment, inducement of breach of contract and/or tortious interference, civil conspiracy, and as determined by compelling an accounting of the profits gained thereby.

H. An award of damages to ESM of all ESM profits lost that are attributable to the described acts of patent infringement, breach of contract, trade secret misappropriation, unfair competition, tortious interference, unjust enrichment, inducement of breach of contract and/or tortious interference, civil conspiracy, and as determined by compelling an accounting of the profits gained thereby.

I. An award of costs of this action together with ESM's attorneys' fees pursuant to 35 U.S.C. § 285.

J. An assessment of interest on the damages so computed.

K. Such other and further relief as this Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY.

                ESM Technologies, LLC

                By its Attorneys,

Dated: _____       /s/ Joseph L. Johnson
                                          Joseph L. Johnson, #45456
                                          Gary R. Cunningham, #25612
                                          LATHROP & GAGE LLP

                                                1845 S. National
                                                P.O. Box 4288
                                                Springfield, MO 65808-4288
                                                Phone:  417-886-2000
                                                Fax:  417-886-9126
                                                Email: jjohnson@lathopgage.com
                                                         gcunningham@lathropgage.com
                                                LOCAL COUNSEL FOR PLAINTIFF

Of Counsel:

Ronald J. Baron, Esq. (RJB-6274)
RJBDocket@hoffmannbaron.com
James F. Harrington, Esq. (JFH-8708)
JFHDocket@hoffmannbaron.com
HOFFMANN & BARON, LLP
6900 Jericho Turnpike
Syosset, New York 11791-4407
Telephone:  516.822.3550
Facsimile:  516.822.3582


SPFDDOCS 327183v1